MOBILFONE OF NORTHEASTERN PENNSYLVANIA, INC., Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

Commonwealth Telephone Company, Intervenor.

No. 81–2399.

United States Court of Appeals, District of Columbia Circuit.

Argued May 26, 1982.

Decided June 25, 1982.

William J. Franklin, Washington, D. C., with whom Russell D. Lukas, Washington, D. C., was on brief, for appellant.

John P. Greenspan, Counsel, F.C.C., Washington, D. C., with whom Stephen A. Sharp, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, and Michael Deuel Sullivan, Counsel, F.C.C., Washington, D. C., were on brief, for appellee.

Thomas J. O'Reilly, Washington, D. C., for intervenor.

Before WRIGHT and MIKVA, Circuit Judges, and WILLIAM J. JAMESON,* Senior District Judge for the District of Montana.

Opinion PER CURIAM.

PER CURIAM:

Mobilfone of Northeastern Pennsylvania, Inc. (Mobilfone) appeals from an order of the Federal Communications Commission (FCC) granting a permit for the construction of a new transmitter to intervenor Commonwealth Telephone Co. (Commonwealth). Mobilfone contends that the FCC erred in failing to designate for an evidentiary hearing Mobilfone's petition to deny Commonwealth's application. We affirm on the basis of two of the three grounds stated by the FCC for denying Mobilfone's petition, and express no view as to the soundness of the third.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

## I. BACKGROUND

Mobilfone and Commonwealth are competing suppliers of radio-telephone paging services[1] in the area around Scranton and Wilkes-Barre, Pennsylvania. Because paging services use radio signals, they must be licensed by the FCC. In Pennsylvania, paging services are also subject to regulation by the state's Public Utilities Commission (PUC). *See* 66 Pa.Stat.Ann. § 1102(17)(f) (Purdon 1980).

Commonwealth is the nation's tenth largest independent telephone company, and in 1981 had total assets of nearly $150 million and net income of more than $6 million. Mobilfone, whose assets and income are measured in the thousands rather than in millions, tried unsuccessfully to block Commonwealth's entry into the paging market in 1976. The FCC dismissed as premature Mobilfone's claim that Commonwealth proposed to charge anticompetitive rates:

> Whatever rates are finally filed in tariff form will be considered in the first instance by the Pennsylvania PUC which must make a determination as to their reasonableness. If, after that time, petitioner or anyone else can allege with some specificity that Commonwealth's rates are indeed anticompetitive, such an issue will be a proper subject for our consideration.

*Commonwealth Telephone Co.*, 61 F.C.C.2d 246, 255 (1976).

Mobilfone then brought an antitrust action against Commonwealth in June 1976, but lost on Commonwealth's motion for summary judgment. *Mobilfone of Northeastern Pennsylvania, Inc. v. Commonwealth Telephone Co.*, 428 F.Supp. 131 (E.D. Pa.), *aff'd*, 571 F.2d 141, 147 (3d Cir. 1978) (antitrust immunity because "the state supervision of the challenged activity is comprehensive and active"). In November 1978, Mobilfone filed a complaint with the Pennsylvania PUC alleging that Commonwealth's rates were unreasonable because Commonwealth cross-subsidized its paging services with receipts from its monopoly telephone services. The PUC administrative law judge recommended in August 1981 that Mobilfone's complaint be dismissed, and the PUC issued a final decision in May 1982 finding Commonwealth's paging rates "just and reasonable" and fully compensatory.[2]

In December 1978, while Mobilfone's complaint before the FCC was still pending, Commonwealth began the instant proceeding by applying for a new, "fill-in" transmitter to improve the technical quality of its paging signal in the mountainous area around Scranton. Mobilfone asked the FCC to deny the application, but the FCC refused on three grounds. Memorandum Order, December 23, 1981 (Order), Joint Appendix (J.A.) 231. First, "Mobilfone has failed to make a *prima facie* showing" of Commonwealth's anticompetitive rates and practices. *Id.* at 3, J.A. 233. Second, "the subject application merely requests a fill-in facility," and "is essentially a modification of Commonwealth's original proposal which is designed to improve the quality of service currently being offered." *Id.* at 4, J.A. 234. Any relief would therefore be incomplete, because "this proposal only concerns a portion of Commonwealth's system, while Mobilfone's allegations concern the whole of Commonwealth's system." *Id.* at 5, J.A. 235. Finally, the FCC elected to defer consideration of Mobilfone's allegations "until the State concludes its proceedings" because "to decide otherwise would be a waste of administrative resources." *Id.*, J.A. 235.

This approach is not only consistent with Commission case precedent and policy but is also consistent with Section 309(a) of

---

1. Paging services permit those trying to contact a subscriber to telephone the service, which transmits a radio signal to the small, portable receiver carried by the subscriber. These receivers are sometimes called "beepers," although they can also receive or transmit voice messages.

2. *Mobilfone of Northeastern Pennsylvania, Inc.*, No. C–22065 (Pa. PUC May 7, 1982). For procedural reasons, the PUC also ordered Commonwealth to refile a tariff for proposed "simultaneous activation services," which allow customers to reach two or more paging receivers by dialing a single telephone number.

the Act because we are not refusing to consider the allegations of anticompetitive rates or practices, but rather deferring our consideration to a more appropriate time and forum.

*Id.*, J.A. 235.

## II. DISCUSSION

In its petition seeking rejection of Commonwealth's application, Mobilfone made detailed allegations that Commonwealth has engaged in anticompetitive practices.[3] Mobilfone now contends that these allegations are factually supported and uncontroverted, and that the FCC was required to designate Commonwealth's application for an evidentiary hearing to resolve material questions of fact under section 309 of the Communications Act, 47 U.S.C. § 309(a) (1976). This section requires the FCC to designate an application for a hearing when "a substantial and material question of fact is presented," or if, for any other reason, the Commission is unable to determine whether granting the application would be consistent with the public interest. *Id.* § 309(a), (d)(1)–(2).

 In light of the limited purpose of Commonwealth's application and the then-pending state PUC proceedings, we affirm

the FCC's actions in this case. The Commission has broad discretion to make determinations of law and policy without holding a hearing, and it may decide that certain unresolved questions of fact are not material to a finding of what is in the public interest. *See United States v. FCC*, 652 F.2d 72, 90–92 (D.C.Cir.1980) (en banc); *Marsh v. FCC*, 436 F.2d 132, 135–36 (D.C. Cir.1970). As the FCC noted, the specific application that Mobilfone challenged involves neither expansion nor initiation of Commonwealth's paging services.[4] The Commission is entitled to control over its procedures and to conclude that Commonwealth's application to improve the technical quality of its signal in an area it was already licensed to serve was an inappropriate vehicle for resolving larger and unrelated questions of predatory pricing. Moreover, the Commission's policy of deferring consideration of certain issues until the completion of related state regulatory proceedings, *see, e.g., NR Recording and Communications, Inc.*, 87 F.C.C.2d 469 (1981), does seem a sound attempt in appropriate circumstances to avoid "a waste of administrative resources." In this case, for example, the Pennsylvania PUC has made findings that are clearly relevant to any future proceedings before the FCC.[5] We need not

---

3. Mobilfone first alleged that Commonwealth's rates, which are slightly lower than Mobilfone's for equivalent services, do not cover Commonwealth's costs and are therefore predatory. For example, Mobilfone contended that Commonwealth's paging revenues do not pay for its extensive advertising of paging services in the telephone company's yellow pages, and that Commonwealth offers a "two-for-one" discount that reduces the subscriber's charge per page by $9 a month even though Commonwealth's costs per page fall only 33 cents a month. Mobilfone also alleged that Commonwealth has engaged in such anticompetitive practices as enclosing paging advertisements in the telephone bills mailed to businesses. The FCC responded that these practices were not improper *per se*, but only if Commonwealth's paging revenues failed to cover their costs. Order at 3, J.A. 233.

4. Although Commonwealth submitted an application that was subject to a full Section 309 review, it might conceivably have chosen to proceed under regulations governing "minor" applications, and its proposal would not then have been subject to challenge by Mobilfone.

*See* 47 U.S.C. § 309(c)(2)(A); 47 C.F.R. §§ 22.-27(c)(1), 22.30(b)(2). In order to proceed under these regulations, an applicant must make an engineering showing that any increase in the reliable service contours is less than 10% or one mile. Order at 4 n.10, J.A. 234 n.10. Commonwealth did not make such a showing, and we note that Section 309(d) gives interested third parties the right to petition the FCC to deny any non-minor applications whether or not the applications involve the whole system of the applicant. *See, e.g., Wometco Enterprises, Inc. v. FCC*, 314 F.2d 266 (D.C.Cir.1963).

5. The Pennsylvania ALJ's decision was made on the basis of nine days of hearings and a record in excess of 600 pages, and much of the proceeding involved disputes over the accuracy of Commonwealth's cost of service studies. The ALJ concluded that Commonwealth earned a 10.9% rate of return on its paging facilities, "which far exceeds the rate of return it earns on its investment in its landline telephone plant." ALJ Recommended Decision, August 24, 1981, at 27, Supplemental Appendix at 27. Mobilfone emphasizes, however, that the ALJ's

determine the relative strength of these two grounds for denying Mobilfone's request for an evidentiary hearing, because taken in conjunction they fully support the Commission's conclusion that Commonwealth's petition did not raise "a substantial and material question of fact."

We therefore express no views about the third ground stated by the FCC, that Mobilfone had not made a *prima facie* showing that Commonwealth has engaged in anticompetitive practices. It has long been settled that antitrust considerations are material to the public interest as defined by section 309. *See National Broadcasting Co. v. United States*, 319 U.S. 190, 222–24, 63 S.Ct. 997, 1011–13, 87 L.Ed. 1344 (1943). This court has held that the FCC must "seriously consider[ ] the antitrust consequences of a proposal and weigh[ ] those consequences with other public interest factors" before approving an application filed

under section 309. *United States v. FCC*, 652 F.2d at 88. In addition, section 11 of the Clayton Act specifically gives the FCC jurisdiction to enforce the Clayton Act's prescription against predatory pricing. 15 U.S.C. § 13(a), 21 (1976). The Commission itself has recognized the need for vigilance against predatory practices when telephone companies compete directly with smaller independent companies in the provision of paging services. *Guardband Proceeding*, 12 F.C.C.2d 841, *recon. denied*, 14 F.C.C.2d 269, 271 (1968), *aff'd sub nom. Radio Relay Corp. v. FCC*, 409 F.2d 322, 328 (2d Cir. 1969). In the past, the FCC has designated antitrust issues for a hearing when petitioners raised objections much like those that Mobilfone makes here.[6] Because we agree with Mobilfone that the Pennsylvania PUC and the FCC jurisdictions involve rate questions that may differ to some extent,[7] this case

---

opinion did not resolve its challenges to Commonwealth's cost accounting practices. *See* Reply Brief for Petitioner Mobilfone at 14 n.38.

6. *See, e.g., Bonduel Telephone Co.*, 68 F.C.C.2d 497 (1978) (FCC designated hearing on basis of showing that telephone company's paging rates possibly did not cover its expenses in providing, administering, and promoting those services); *Illinois Bell Telephone Co.*, 69 F.C.C.2d 1199, 1206 (1978) (hearing designated because "Illinois Bell includes information about paging in its information packets that describe business telephone services"); *United Telephone of Ohio*, 26 F.C.C.2d 417 (1970) (company's paging service costs were considerably higher than its paging revenues). *See generally Guardband Proceeding*, 12 F.C.C.2d at 841 (establishing Commission policy against cross-subsidization of paging services from telephone company wireline revenues).

7. The Pennsylvania PUC has stated that its application of "antitrust principles . . . would, in our opinion, undermine the rationale for public utility regulation. . . . [P]rinciples of the free competitive market, which underlie antitrust legislation, do not apply to industries regulated by the Commission." *Airsignal International of Pittsburgh*, No. A.00101365, at 31 (Pa. PUC Jan. 14, 1980). Mobilfone's PUC complaint alleged that Commonwealth's rates granted "an unreasonable preference or advantage" to some persons and subjected others to "an unreasonable prejudice or disadvantage," Brief for Petitioner Mobilfone at 8, and not that these rates were predatory. The FCC has acknowledged that its scrutiny of anticompetitive

allegations "in no sense imping[es] on the regulatory ambit of a state commission; our concern is not with the level of rates; our concern is that there may be unfair or illegal competitive practices . . . ." *United Telephone of Ohio*, 12 F.C.C.2d at 419. Even more recently, the FCC found no conflict with state regulation in its imposition of competitive restrictions on wireline carriers that offer paging services:

> We note that in imposing this requirement we are establishing standards to deter unfair competitive practices and to foster competitive equality between wireline carriers and [radio common carriers]. We are in no way addressing the level of the charges, prescribing any particular level or pattern of rates or otherwise participating in the rate-making process, which is the function of the authorities in the particular jurisdiction where the services are provided. Our goal is to avoid potential "price squeeze" effects, *United States v. Aluminum Co. of America*, 148 F.2d 416 (1945), consistent with our mandate to consider and protect the public interest. . . .

*Final Report and Order*, Docket No. 80–183, May 14, 1982, at 10 n.17. Although we note the distinction between a state's determination that a utility's rates are not "unreasonably" high and the FCC's concern for whether rates are predatorily low, the Pennsylvania PUC in this case specifically found that Commonwealth's rates "were just, reasonable, nondiscriminatory *and fully compensatory*." *Mobilfone of Northeastern Pennsylvania, Inc.*, No. C–22065, at 2 (Pa. PUC May 7, 1982) (emphasis added). If and when Mobilfone presents its

also illustrates the serious questions that might arise if the FCC were always to defer consideration of important issues simply on the basis of a pending proceeding before a state regulatory commission. These questions are not before us, however. The Pennsylvania PUC proceedings have been concluded, and the FCC notes that the way remains open for Mobilfone to challenge the renewal of Commonwealth's license or petition to revoke that license. It was not error for the FCC to conclude, in the circumstances of this case, that consideration of Mobil-

fone's allegations, even if those allegations are sufficient to constitute a *prima facie* case, could be deferred to "a more appropriate time and forum." Order at 5, J.A. 235.

*Affirmed.*

allegations to the FCC in an appropriate procedural posture, the FCC may determine what weight it should give the PUC's finding.